# Olds *v.* Marshall.

*Bill in Equity to enforce Resulting Trust in Lands.*

1. *Conveyance on consideration of one dollar; title subsequently acquired by grantor.*—A conveyance of land by a father to his daughter, on the recited consideration of one dollar in hand paid, is a convey-

ance on valuable consideration as between the parties, and constitutes the grantee a purchaser; and a title afterwards acquired by the grantor at once enures to the benefit of the grantee, by virtue of the covenants of warranty in the deed.

2. *Resulting trust in lands; who may enforce.*—If a father, whose lands have been sold under legal process, furnishes the money to his son to redeem it for him, and the son, on redeeming, takes the title to himself, without the knowledge or consent of the father, a resulting trust arises in favor of the latter; and if the father, prior to the sale, had conveyed the land with covenants of warranty to his daughter, she may enforce the trust by bill in her own name, after the death of the father.

3. *Same; variance between allegations and proof.*—Under a bill which seeks to enforce a resulting trust in complainant's favor, in a tract of land once conveyed to her by her father, but which was afterwards sold under legal process against him, and redeemed with money furnished by him for that purpose to his son, who took the title to himself; if the bill alleges that the father redeemed the land for the complainant's benefit, while the evidence shows that he redeemed for himself, and the redemption only enured to the benefit of the daughter by virtue of the covenants in her deed, "possibly this variance is immaterial;" but, if the bill alleges that the father furnished only a specified part of the redemption money, and that the son advanced the residue as a loan to the father, and has been repaid the amount so advanced by the rents and profits received, asking an account as to these matters, while the evidence shows that all of the money was furnished by the father, the variance is fatal, unless remedied by amendment.

4. *Dismissal of bill in vacation, without opportunity to amend.*—When the chancellor dismisses a bill in vacation, on final hearing on pleadings and proof, on the ground that the complainant has failed to make out his right to relief, and this court, on appeal, finds that a case for equitable relief is proved, but that there is a fatal variance between the allegations and the proof, the decree will be reversed, and the cause remanded, in order that the complainant may have an opportunity to amend his bill.

APPEAL from the Chancery Court of Jackson.

Heard before the Hon. THOMAS COBBS.

The bill in this case was filed on the 28th December, 1886, by Mrs. Martha E. Olds, against G. Humphrey Marshall, who was her brother; and sought to enforce a resulting trust in a tract of land, which had once belonged to A. Marshall, their father, and of which he continued in possession until his death in March, 1886. By deed dated October 1st, 1868, said A. Marshall and wife conveyed said tract of land to the complainant, who was then unmarried, on the recited consideration of one dollar in hand paid; and the deed contained the usual covenants of warranty against incumbrances, and for quiet enjoyment. In 1874, a creditor of said A. Marshall obtained a judgment against him, founded on a debt which was in existence at the time this deed was executed; and filed a bill in equity in 1877, to subject the land to the satisfaction of his debt. The land was sold in 1879, under a decree rendered

[Olds v. Marshall.]

in that suit, Wm. Washington becoming the purchaser, at the price of $370.95. In January, 1881, just before the expiration of the two years allowed for redemption, the land was redeemed, G. Humphrey Marshall paying the money, and taking a deed for the land to himself. The complainant claimed that the land was redeemed by her father, for her benefit, the allegations of the bill being in these words: "On or about the 1st January, 1881, said A. Marshall called the defendant, his son, to his bedside, and told him that he wanted to redeem said land from said Washington for your oratrix, and said: 'I have here $165, and I want you to borrow the balance from W. J. Tally, and go and pay Washington;' to which the defendant replied, that he would go and attend to the matter for him, and could let him have the balance of the money without borrowing from Tally; to which said A. Marshall assented." An amended bill was afterwards filed, varying these allegations; but, on a former appeal in the case (86 Ala. 296), the amendment was held a departure from the original bill, and was disallowed; and on the second hearing in the court below, as the decree now appealed from recites, the amended bill was abandoned, and the cause submitted "on the original bill, pleadings and proof." The chancellor dismissed the bill, holding that the complainant had failed to establish her case; and his decree is here assigned as error.

J. E. BROWN, and WATTS & SON, for appellant, cited *Bolling v. Munchus*, 65 Ala. 558; *Lawrence v. McCalmont*, 2 How. U. S. 426; *Chapman v. Abrams*, 61 Ala. 108; *Hunter v. Bibb*, 79 Ala. 357; *Montgomery v. Givhan*, 24 Ala. 568; *Andrews v. Andrews*, 28 Ala. 432; *Kelly v. Allen*, 34 Ala. 663; *Gilchrist v. Gilmer*, 9 Ala. 985; *Eldridge v. Turner*, 11 Ala. 1050.

R. C. BRICKELL, *contra*, cited *Lehman v. Lewis*, 62 Ala. 129; *Bates v. Kelly*, 80 Ala. 142; *Patton v. Beecher*, 62 Ala. 579; *White v. Farley*, 81 Ala. 563; *Edwards v. Rogers*, 81 Ala. 568; *Manning v. Manning*, 68 Ala. 351; *Botsford v. Burr*, 2 John. Ch. 409; 1 White & Tudor's L. E. Eq. 336; *Bibb v. Hunter*, 79 Ala. 356; *Hatton v. Landman*, 28 Ala. 127.

STONE, C. J.—The complainant and defendant are brother and sister. A. Marshall, their father, was the original owner of the land, the subject of this suit, and lived on it until his death in 1886. In 1879, the land was sold under a decree in chancery, to satisfy a judgment debt of A. Marshall, the father;

[Olds v. Marshall.]

and Washington became the purchaser, bidding and paying the amount of the judgment under which it was sold. It does not appear that Washington ever obtained possession of the land. Just before the expiration of the two years after the sale, the land was redeemed from Washington. At that time, A. Marshall was so afflicted with disease, and disabled, as to be incapable of attending to business. The son, G. Humphrey Marshall, lived with his father all that time, and attended to his business. G. Humphrey carried the money to Washington, and redeemed the land, and took the latter's deed in his own name as grantee. This deed is not recorded, and it is not shown that the father knew it had been made to the son, until shortly before his death, when he complained of it to his son. The title is still in G. Humphrey Marshall, and he is in possession.

In 1868, A. Marshall, the father, conveyed the land in controversy to his daughter, the complainant in this suit. She was then unmarried. She subsequently married Olds, and is now his widow. She filed this bill in her own name, and prayed that the title of the land be devested out of G. Humphrey Marshall, and vested in her. The asserted state of facts and law on which she founds this claim, and prays for this relief, may be stated as follows: *First*, that the deed from her father to her contains covenants of warranty, both implied and express, and is founded on a recited money consideration; that this, as between the parties, is a deed on valuable consideration, as distinguished from one merely voluntary, and constitutes the complainant a purchaser, not a donee. This legal position is well taken.—*Bolling v. Munchus*, 65 Ala. 558; *Rutledge v. Townsend*, 38 Ala. 706; *Lawrence v. McCalmont*, 2 How. 426, 445; 15 Curt. Dec. 178. *Second*, that whatever title and right to the land the father, A. Marshall, acquired after he executed the deed to the complainant, vested instantly in her by virtue of the covenants in his deed to her. This position is also well taken.—*Chapman v. Abrams*, 61 Ala. 108, 114; *Blakeslee v. Mobile Life Ins. Co.*, 57 Ala. 205. *Third*, that the redemption of the land from Washington, though effected through G. Humphrey, was really with the money of A. Marshall, and title taken in the name of the son without the knowledge, and against the consent of the father. If this be so, there is a clear resulting trust in favor of the father, and equity does not hesitate to declare that G. Humphrey Marshall holds the title wrongfully, and in trust for A. Marshall, his father.—3 Brick. Dig. 785, §§ 49, 50; *Bibb v. Hunter*, 79 Ala. 351.

On the foregoing postulates of law and fact, it is clear that

the complainant, Mrs. Olds, has succeeded to all the rights · her father, A. Marshall, could have asserted; and if she has established the requisite facts, it is no valid objection to her bill that it is filed in her name. If the facts attending the redemption armed A. Marshall with an equity against G. Humphrey Marshall, the deed from A. Marshall to complainant transferred that equity to her.

There is some conflict in the testimony. G. Humphrey Marshall testified, that he redeemed the land with his own money, and took the deed to himself with the consent of his father, and of Washington, from whom it was· redeemed. Several witnesses testify, and make it clear beyond all question, that A. Marshall furnished one hundred and sixty-five dollars of the money—cash—with which the redemption was effected; and their contention is utterly irreconcilable with the son's contention, that title was taken in his name with his father's consent. The last interview with his father, of which we have any testimony, disproves his statement that his father consented that the title should be placed in his name. The testimony of Tally, a disinterested witness, explains the transaction had with him. According to his version, the agreement was had with the father, although the son was present. He trusted the father, and not the son. It was the father who agreed to deliver the crops or produce, and Tally's promise to furnish the requisite funds to perfect the redemption was made to the father. There was in fact no loan from Tally. About cotton enough to make him safe in the money he paid out— $228—had already reached him when he advanced the money. Now, although Humphrey aided in the crop, and helped to produce the cotton, it is manifest it was treated as the father's transaction, the father's cotton, and the money received for it as the father's money. So, the proof satisfies us that the redemption was made with money that was treated as the father's, and had been obtained by him under his agreement with Tally. If any of the cotton belonged to Humphrey, or if his father owed him on that account, this was at most a debt from his father, and gave him no interest in the land. It showed no right in him to take the deed in his own name, in the absence of proof that his father had so consented. The proof authorized a recovery.—*Montgomery v. Givhan*, 24 Ala. 568; *Mosely v. Lane*, 27 Ala. 62.

Does the bill, as framed, entitle the complainant to relief? In cases of this kind, in addition to the satisfactory strictness required in the proof, it must conform in substance to all the material averments of the bill.—*Lehman v. Locke*, 62 Ala. 129, 133; *Hatton v. Landman*, 28 Ala. 137; 3 Brick. Dig.

[Olds v. Marshall.]

785, §§ 47 *et seq.* The bill charges that the avowed purpose of the father in arranging for the redemption was, that it should be for the benefit of Mrs. Olds, the complainant. The testimony disproves the intended benefit to complainant. But possibly this variance is immaterial, as equity declares such redemption to be for her benefit. The bill, however, charges that the father furnished one hundred and sixty-five dollars, and no more, of the redemption money, and that the residue was furnished by the said G. Humphrey Marshall to the said A. Marshall as a loan. It charges that with the money obtained and supplied the redemption was perfected. It is then averred that the said G. Humphrey has ever since had possession and use of the land, and that the value of the use and occupation has been five hundred dollars a year—much more than enough to repay him the money loaned to the said A. Marshall. To this end, the bill prays for an account of the rents and profits, and that it be declared that the said G. Humphrey has been more than repaid the sum so lent to his father. Now, while the result attained on each category of facts may possibly be the same, so far as the recovery of the land itself is concerned, yet there is a marked difference in the line of proof necessary to establish the differing categories. And the measure of recovery of mesne profits is not in each case the same. We feel bound to hold that there is a variance between the allegations and proof, which is fatal to the complainant's right of recovery under the present bill ; and for that reason the Chancellor did not err in dismissing it, in its then shape.

The final decree of the Chancellor was rendered in vacation. It was a general order of dismissal, without reserving to complainant the right or privilege of moving for leave to amend. Under the ruling of the Chancellor as to the merits, the decree was right; for he, in effect, held that the case failed in its proof. We have reached a different conclusion, and hold that the proof is *prima facie* sufficient. The Chancellor's decree, however, was authorized, by the substantial variance between the allegations and proof, unless the bill was amended. This defect in the bill is amendable under our liberal system of amendments.—Code of 1886, § 3449, and note. The Chancellor erred, however, in making a final order of dismissal in vacation, without giving to complainant an opportunity to amend her bill, so as to make it correspond with the testimony. *Gilmer v. Wallace*, 75 Ala. 220; *Gilmer v. Morris*, 80 Ala. 78, 88.

The decree of the Chancellor is reversed, and a decree here rendered, ordering that unless within forty days after the cer-

[Richmond & Danville Railroad Co. v. Vance.]

tification of this decision to the Chancery Court complainant's bill is so amended as to make it conform to the testimony, then her bill is to stand dismissed.

Reversed, rendered and remanded.